## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

MIGUEL COCA, et al.,

       Plaintiffs,

       v.

CITY OF DODGE CITY, KANSAS, a
municipal corporation, et al.,

       Defendants.

Case No. 22-1274-EFM-RES

## STIPULATION AND ORDER REGARDING PRODUCTION OF
## ELECTRONICALLY STORED INFORMATION AND OTHER MATERIALS

This stipulation is made and entered into, by and between Plaintiffs Miguel Coca and Alejandro Rangel-Lopez; the City of Dodge City as a municipal corporation; the Dodge City Commission; and E. Kent Smoll, Michael Burns, Rick Sowers, Chuck Taylor, and Joseph Nuci, in their official capacities as members of the Dodge City Commission, by their respective undersigned counsel.

WHEREAS, when engaged in discovery proceedings in this action, the Parties may undertake, among other things, the searching for and production of electronically stored information; and

WHEREAS, the Parties believe that entry of this Stipulated Order Regarding the Production of Electronically Stored Information and Other Materials (hereinafter, "the Order") will enable pre-trial discovery to proceed in a more efficient manner.

IT IS, therefore, hereby STIPULATED AND AGREED, by and between the Parties through their respective counsel of record, and adopted by the Court as its order, as follows:

## A.    DEFINITIONS

These definitions apply throughout this Order without regard to capitalization:

1.    "Litigation" means the case captioned *Coca et al v. Dodge City, Kansas, City of, et al.,* Case No. 6:22-cv-01274-EFM-RES (D. Kan.).

2.    "Electronically Stored Information" or "ESI" carries its broadest possible meaning consistent with Fed. R. Civ. P. 34(a) and Fed. R. Evid. 1001.

3.    "Paper Discovery" means any Document or thing discoverable under Fed. R. Civ. P. 26(b)(1) and Fed. R. Civ. P. 34 that cannot be characterized as ESI.

4.    "Document" carries its broadest meaning consistent with Fed. R. Civ. P. 34 and includes both ESI and Paper Discovery.

5.    "Email" means an electronic means for communicating written information through non-telephone systems that will send, store, process, and receive information.

6.    "Format" means the internal structure of a file, which defines the way it is stored and used.

7.    "Native Format" means the Format of ESI in the application in which such ESI was originally created.

8.    "Party" or "Parties" means all Plaintiffs and all Defendants.

9.    "Plaintiffs" means Plaintiffs Miguel Coca and Alejandro Rangel-Lopez.

10.    "Defendants" means: City of Dodge City ("Dodge City" or the "City") as a municipal corporation; the Dodge City Commission (the "Commission"); and E. Kent Smoll, Michael Burns, Rick Sowers, Chuck Taylor, and Joseph Nuci (together, "Defendants Commissioners"), in their official capacities as members of the Dodge City Commission.

11.    "Producing Party" means a Party that produces Documents.

12.    "Receiving Party" means a Party to whom Documents are produced.

13.    "Tagged Image File Format" or "TIFF" refers to the CCITT Group IV graphic file Format for storing bit-mapped images, with multiple compression Formats and resolutions.

14.    "Production Volume" means a unique alpha-numeric volume name representing a range of Documents (*i.e.*, batch) sent to the Receiving Party by the Producing Party.  The Production Volume is named consecutively beginning with "[Party Name]001" and continuing sequentially until all Documents have been produced.

**B.      SCOPE**

1.      The procedures and protocols set forth in this Order shall govern the production of Documents between the Parties in the Litigation.  Any practice or procedure set forth herein may be varied by written agreement of the Parties.  By agreeing to this protocol, the Parties do not admit that the production of ESI is necessary or appropriate for any given document request, to the extent that document requests are served.  The Parties reserve all rights to make objections when responding to document requests.

2.      Nothing in this Order establishes any agreement as to either the temporal or subject matter scope of discovery in the Litigation.

3.      The Parties reserve the right to request the production of Documents from sources or individuals that were not identified pursuant to Paragraph G and that the Receiving Party has a good faith belief possess relevant Documents.

4.      Nothing in this Order precludes or limits the ability of any Party to serve subpoenas on any non-Parties as may be permitted by the Federal Rules of Civil Procedure.

5.      The Parties shall meet and confer to resolve any disputes that arise under this Order.  In the event the Parties cannot reach agreement on a disputed matter after exhausting their meet and confer obligations pursuant to D. Kan. Rule 37.2, the Parties may request a discovery conference with the Court.

6.      Sources of custodial data may include, but are not limited to, local hard drives, network home or personal file shares, removable storage, Email, removable storage media, online data storage such as Dropbox or Google Drive, messaging phones, tablets, social media, and hard copy or physical files.  Sources of non-custodial data may include, but are not limited to, databases, file servers, storage area networks, Email servers, web servers, online data stores such as Dropbox, Box, and Google Drive, online Email systems, document or record management systems, departmental/project/collaborative/shared storage spaces, e-rooms, structured data stores, application data, source code repositories, social media, and hard-copy document repositories.  Pursuant to the Parties' existing preservation obligations under law, potentially relevant Documents and ESI from identified custodial and non-custodial sources will be preserved pending identification of data to be produced in this Litigation.

**C.      PRODUCTION FORMAT**

1.      **ESI Production Format**:  The production data will be exchanged between counsel in encrypted form.  At the Receiving Party's discretion, each production shall be provided either in Adobe PDF Format with all Documents Bates stamped or in the following folder structure:

          a.      **IMAGES**:  This folder will contain multiple sub-folders with single-page TIFF files in them.  Other than color JPEGs pursuant to Paragraph C.5, no other type of file should reside in the "IMAGES" folder.  Except as provided in Paragraph C.7, ESI shall be produced electronically, as single page, uniquely and sequentially numbered Group IV TIFF files not less

than 300 dpi resolution.  Documents produced in TIFF Format shall be produced with Bates numbers stamped on each page.  Bates numbers shall be of constant length, be sequential across a Document and its attachments, be unique across the entire production, and contain no special characters except dashes or underscores.  Documents produced in TIFF or JPEG Format shall be produced, to the extent practicable, such that comments, notes, speaker notes, track changes, hidden rows, hidden columns, and any other hidden or invisible text are displayed. Sub-folders shall not contain more than 1000 images per folder.

b.  **TEXT**:  The Producing Party will provide an extracted text file, in UTF-8 ("Unicode") Format where appropriate, for each electronic Document and an Optical Character Recognition ("OCR") text file for each imaged Paper Document, unless the Document has been redacted.  In the case of files where the text of the Document is electronically extractable, the text file should contain the electronically extracted text.  The text file shall be named after the Bates number of the first page of the Document and shall be placed in a "TEXT" folder.  For Documents that contain redactions, the Producing Party will provide an OCR text file made from the redacted images.  All searchable text including extracted text and OCR is to be provided as multi-page searchable text (.TXT) files.

c.  **DATA**:  Documents produced to each Party shall include industry-standard DAT load files in ASCII delimited Format and Opticon ("OPT") files.

Specifically, the images shall be accompanied by an image cross-reference load file, including an OPT file compatible with Concordance version 8.5 or above providing the beginning and ending endorsed number of each document and the number of pages it comprises.  The load file shall have the standard Concordance delimiters.

The Producing Party shall also provide a data load file ("Data Load File" or "DAT") corresponding to the TIFF files and Native Format files that shall contain the metadata, as reasonably available, associated with each production field specified in Schedule A, also in standard Concordance Format.  For the avoidance of any doubt, there is no obligation on the Producing Party to create metadata where none exists or is not reasonably available, provided however that nothing herein limits a Party's obligation to preserve potentially relevant metadata.

d.  **NATIVES**:  This folder will contain only Native Format files subject to Paragraph C.7.

2.      **Production of Paper Discovery**:  At the discretion of the Producing Party, Paper Discovery may be produced in electronic form.  If produced in electronic form, the production will be provided in the same folder structure stated in Paragraph C.1.  The data load file stated in Paragraph C.1.c shall, to the extent practicable, contain the metadata associated with each production field specified in Schedule A.  For any Paper Discovery produced in electronic form, the Producing Party shall unitize the files logically and as they exist in the ordinary course of business and shall provide a text file created using OCR to the extent reasonably practicable.  A Party need not produce a non-electronic duplicate of any Paper Discovery produced in electronic form, except that upon a reasonable request by the Receiving Party and for good cause (*e.g.*, problems with legibility or formatting), the Producing Party must produce the Paper Discovery in its original Format at a mutually agreeable time and place.

3.      **Appearance and Content**:  Subject to any necessary redaction, each Document's TIFF image file shall contain the same information and same physical representation as the Document did in its original Format, whether paper or electronic, consistent with the processing specifications set forth in Paragraph D.

4.      **Document Unitization**:  If a Document is more than one page, to the extent possible, the unitization of the Document and any attachments or affixed notes shall be maintained as it existed when collected by the Producing Party.  The Producing Party should determine logical Document breaks, and attachments shall be preserved.  Physical bindings, such as staples and clips, should be considered but should not be used exclusively for determining Document boundaries and attachments.  If unitization cannot be maintained, the original unitization shall be documented in a load file or otherwise electronically tracked.

5.      **Color**:  Documents containing color may be produced in grayscale.  Upon reasonable request by the Receiving Party and for good cause, Documents containing color shall be produced in color, in JPEG (.jpg) Format.

6.      **Document Numbering and Confidentiality Designation for TIFF Images**: Each page of a Document produced in TIFF file Format shall have a legible, unique numeric identifier ("Document Number"; a/k/a Bates number) not less than six (6) digits electronically "burned" onto the image at a place on the Document that does not obscure, conceal, or interfere with any information originally appearing on the Document.  The Document Number for each Document shall be created so as to identify the Producing Party and the Document Number (*e.g.*, "RTP0000000").  The Parties agree that the Document Number shall not contain any space marks or special characters other than hyphens or underscores.  Each Plaintiff and each Defendant shall have a unique identifying name.  The confidentiality designation should also be electronically "burned" onto the image at a place on the Document that does not obscure, conceal, or interfere with any information originally appearing on the Document.

7.      **Production of ESI in Native Format**:  In the event that a Producing Party produces video, animation, or audio files, such documents shall be produced in their Native Format.  All unredacted Microsoft Excel files will be produced in Native Format.  To the extent reasonably feasible, PowerPoint files shall be produced in accordance with Paragraph C.1 where the PowerPoint slides are readable.  PowerPoint slides should be produced in slideshow horizontal view with speaker notes, hidden content, comments, and revisions included.  Upon

reasonable request by the Receiving Party and for good cause, other Documents shall be produced in their Native Format.  In the event that a Receiving Party requests production of such other Documents in Native Format, the Producing Party and the Receiving Party shall negotiate in good faith about the timing, cost, and method of such production.  No Document produced in Native Format shall be intentionally manipulated to change the appearance or substance of the Document as it existed prior to its collection.

8.     **De-Duplication**:  A Document is an exact duplicate of another Document only if it and all of its family members have the same MD5 or SHA-1 hash values as the other Document and its family members.  If a Document and its exact duplicates are associated with the same custodian, the Producing Party may withhold the exact duplicates from production.  If a Document and its exact duplicates are associated with different custodians, the Producing Party may withhold the exact duplicates from production and provide a metadata field for the produced Document indicating all custodians for whom duplicates were withheld.  Other than using standard discovery tools and methodologies, including but not limited to hash-value global deduplication and industry-standard de-NISTing of files, the Parties must meet and confer to disclose and discuss any other proposed use of technologies or methodologies that would reduce the reviewable collection or production.

9.     **Original Documents**:  Nothing in this Order shall eliminate or alter any Party's obligation to retain: (1) Documents in Native Format, including associated metadata, of all ESI produced in the Litigation pursuant to Paragraph C.7; and (2) original hard copy Documents for all Paper Discovery produced in the Litigation pursuant to Paragraph C.2.

10.     **Third-Party or Database Software**:  To the extent that Documents produced pursuant to this Order cannot be rendered or viewed without the use of specialized tools or software or proprietary third-party software, the Parties shall meet and confer to minimize any expense or burden associated with the production of such Documents in an acceptable Format, including issues as may arise with respect to obtaining access to any such software and operating manuals which are the property of a third party.

11.     **ESI of Limited Accessibility**:  If a Producing Party contends that any responsive ESI is not reasonably accessible within the meaning of Fed. R. Civ. P. 26(b)(2)(B), that Party shall timely identify such ESI with reasonable particularity and shall provide the Receiving Party with the basis for declining to produce such ESI, including, but not limited to, information about the nature of any limitations on access; the likely costs that might be incurred in producing such ESI; the method used for storage of such ESI (*e.g.*, the type of system used to store the ESI); and the places in which such ESI is kept.  The Parties shall negotiate in good faith concerning the production of any such ESI.  If the Parties are unable to reach agreement after exhausting their meet and confer obligations pursuant to D. Kan. Rule 37.2, the Parties may request a discovery conference with the Court.

## D.     PROCESSING SPECIFICATIONS

The Producing Party shall collect and process Documents using forensically sound methods that avoid spoliation of data.  The Producing Party shall use the following specifications when converting ESI from its Native Format into TIFF image files prior to its production:

1.      To the extent reasonably feasible, Documents produced in Group IV TIFF Format shall be produced such that comments, notes, speaker notes, track changes, hidden rows, hidden columns, and any other hidden or invisible text are displayed.  Pursuant to Paragraph C.7, a Party may request production in Native Format;

2.      OLE Embedded files, other than Microsoft Office files, Adobe PDF files, and images, need not be extracted as separate Documents;

3.      To the extent Documents in a foreign language are produced consistent with Paragraph E.1, processing of such Documents shall be Unicode-compliant; and

4       All electronic Documents shall be processed so as to show fielded dates and times in UTC.

## E.      ADDITIONAL ISSUES

1.      **English Language**:  Documents existing in more than one language shall be produced in any and all languages in which they exist.  If no English version of a Document is available, the Producing Party does not have an obligation to produce an English translation of that Document.

2.      **Cost Shifting**:  All costs associated with production of Documents pursuant to this Order shall be borne by the Producing Party unless otherwise agreed to by the Parties or ordered by the Court.

3.      **Stipulated Protective Order**:  A separate stipulated protective order ("Protective Order," ECF No. 46) has been entered into between the Parties.  Nothing in this Order is intended to waive or modify any right or obligation under the Protective Order.  Any terms of the Protective Order governing the inadvertent production of privileged information also govern all production pursuant to this Document Production Protocol.

## F.      PRIVILEGE LOG

1.      Consistent with Federal Rule of Civil Procedure 26(b)(5)(A), a Party withholding any responsive Document on the grounds of privilege, immunity, or any similar claim shall provide to the Receiving Party a log containing the information described in Paragraph F.2 ("Privilege Log"), except that the Parties shall not be required to provide a Privilege Log for any withheld privileged communications or work product involving the Party and outside counsel of record in this Litigation on or after December 14, 2022.

2.      For any Documents withheld or redacted for privilege or work product, the Privilege Log shall contain information sufficient to allow the Receiving Party and the Court to evaluate the claim of privilege, including, to the extent practicable: (i) the date of the Documents; (ii) the Document type; (iii) the identity of all persons who authored, sent, received, or otherwise maintained the Documents, including whether such persons are attorneys; (iv) the subject matter of the Documents and/or the legal advice requested or provided; (v) the type or nature of the privilege asserted (*e.g.*, attorney-client privilege, work product doctrine, etc.); and (vii) the range of index numbers corresponding to the Documents in the category.

3.      The Parties will exchange initial Privilege Logs by no later than thirty (30) days before the Court-ordered deadline for the substantial completion of Document productions.

## G.      TIMING AND SEQUENCING OF ELECTRONIC DISCOVERY

All Documents shall be produced pursuant to the schedule set forth in the Court's scheduling order ("Scheduling Order," ECF No. 44) and any further order(s) by the Court modifying the same.  To facilitate the timely production of Documents pursuant to this Order, the Scheduling Order, and any further order(s) by the Court modifying the same, each Party shall produce Documents on a rolling basis.

Additionally, within 14 days after the entry of this Order, the Parties shall promptly meet and confer in good faith to respond to inquiries from the Receiving Party regarding relevant custodians; sources; locations; and other pertinent aspects on the scope of any collection, processing, and review, including but not limited to:

1.      The scope and methods for preservation of potentially relevant Documents, including the recipients of litigation hold memoranda;

2.      A description of sources and custodians that may have responsive Documents and information; and

3.      Search terms, date filters, or other culling criteria or methods each Party proposes to use in searching for responsive Documents from the identified sources, including the use of predictive coding or other types of technology-assisted review.  All searches will be constructed in good faith by the Parties or their respective technical vendors.

The Parties acknowledge that discovery is an iterative process.  Accordingly, while the Parties (at the option of the Receiving Party) may begin to meet and confer in good faith regarding discovery in advance of any document productions by the Producing Party, the Producing Party may subsequently continue to develop its methods for collecting, processing, and review.  Therefore, this Order contemplates that the Parties will engage in continued dialogue regarding discovery and cooperate in good faith to conduct those discussions with sufficient transparency and efficiency.

**IT IS SO ORDERED.**

Dated:  February 3, 2023

/s/ Rachel E. Schwartz
Rachel E. Schwartz
United States Magistrate Judge

**WE SO MOVE**
**and agree to abide by the**
**terms of this Order**

**WE SO MOVE**
**and agree to abide by the**
**terms of this Order**

| | |
|---|---|
| Dated: January 31, 2023<br><br>AMERICAN CIVIL LIBERTIES UNION OF KANSAS<br><br>By: */s/ Sharon Brett*<br>Sharon Brett   KS 28696<br>P.O. Box 917 Mission, KS 66201<br>sbrett@aclukansas.org<br>913-490-4100<br>UCLA VOTING RIGHTS PROJECT<br><br>Chad W. Dunn*<br>Sonni Waknin*<br>Bernadette Reyes*<br>3250 Public Affairs Building Los Angeles, CA 90065<br>chad@uclavrp.org<br>sonni@uclavrp.org<br>bernadette@uclavrp.org<br>310-400-6019<br><br>AMERICAN CIVIL LIBERTIES UNION, INC.<br><br>Jonathan Topaz*<br>Sophia Lin Lakin*<br>125 Broad Street, 18th Floor New York, NY 10004<br>jtopaz@aclu.org<br>slakin@aclu.org<br>212-549-2500<br><br>CLEARY GOTTLIEB STEEN & HAMILTON LLP<br><br>Abena Mainoo*<br>Jonathan I. Blackman*<br>JD Colavecchio*<br>Mijin Kang*<br>Elizabeth R. Baggott*<br>One Liberty Plaza New York, NY 10006<br>amainoo@cgsh.com | Dated: January 31, 2023<br><br>FOULSTON SIEFKIN LLP<br><br>By: */s/ Anthony F. Rupp*<br>Anthony F. Rupp, KS #11590<br>Tara Eberline, KS #22576<br>Sarah E. Stula, KS #27156<br>7500 College Boulevard, Suite 1400<br>Overland Park, Kansas 66210<br>(913) 498-2100<br>(913) 498-2101 (fax)<br>trupp@foulston.com<br>teberline@foulston.com<br>sstula@foulston.com<br><br>-and-<br><br>FOULSTON SIEFKIN, LLP<br><br>Clayton Kaiser, KS #24066<br>1551 North Waterfront Parkway, Suite 100<br>Wichita, Kansas 67206<br>(316) 267-6371<br>(316) 267-6345 (fax)<br>ckaiser@foulston.com<br><br><br>ATTORNEYS FOR DEFENDANTS |

jblackman@cgsh.com
jdcolavecchio@cgsh.com
mkang@cgsh.com
ebaggott@cgsh.com
212-225-2000

and

FUQUA LAW & POLICY, P.C.

Scott Fuqua*
P.O. Box 32015 Santa Fe, NM 87594
scott@fuqualawpolicy.com
505-982-0961

ATTORNEYS FOR PLAINTIFFS

* Admitted Pro Hac Vice

**Schedule A:  Production Fields for ESI**

For each document, the Producing Party shall provide the metadata specified below, to the extent it can reasonably be extracted or otherwise provided, in a delimited text file.

| Field Name | Description |
|---|---|
| Volume | The Production Volume as defined in Paragraph A.14. |
| Beg Bates | Number endorsed on first page of document. |
| End Bates | Number endorsed on last page of document. |
| Page Count | Total number of pages in document. |
| Beg Attach or Beg Family | Number endorsed on first page of first document in a family (*i.e.*, documents and all attachments thereto). |
| End Attach or End Family | Number endorsed on last page of last document in a family (*i.e.*, documents and all attachments thereto). |
| Attach Count | If the document has an attachment, this field will contain the number of attachments to the document. |
| Redaction | Indication as to whether the document has been redacted. |
| Custodian / Source | Name of the person who had custody or control over the documents at the time of collection.  If not from a custodian, the field should indicate the non-custodial source of the documents (*e.g.*, "XX Data Room"). |
| To | If the document is an Email, the person to whom an Email is addressed.  The information in this field is collected when the metadata from an Email is processed.  The information in this field will be added to the recipients field. |
| From | Author of an Email.  The information in this field is collected when the metadata from an Email is processed.  The information in this field will be added to the author field. |
| CC | Person(s) who were copied in an Email.  The information in this field is collected when the metadata from an Email is processed.  The information in this field will be added to the recipients field. |
| BCC | Person(s) who were blind copied in an Email.  The information in this field is collected when the metadata from an Email is processed.  The information in this field will be added to the recipients field. |
| Title / Subject | If available, verbatim subject or re: line, or discernible document title appearing on the document's first page. |
| Document Date | If available, the date of the document. |

| Field Name | Description |
|---|---|
| Parent Date | If the document is an Email, both the Email and attachment should bear the date the Email was sent in this field to allow chronological sorting while maintaining family relationships. |
| Sent On Date | Date the Email was sent.  This field will only be populated for Email messages that were sent. |
| Last Modified Date | Date the document was last modified. |
| Time Zone for Dates | Selected time zone for all dates displayed in the database. |
| File Name | Original file name. |
| Author | If the document is not an Email, the author of the document. |
| Document Type | The file extension describing the type of document (*e.g.*, Microsoft Word document). |
| MD5 Hash Value | The MD5 hash of the native file, not the produced TIFF files. |

**Schedule B:  Production Fields for Paper Discovery**

| Field Name | Description |
|---|---|
| Volume | The Production Volume as defined in Paragraph A.14. |
| Beg Bates | Number endorsed on first page of document. |
| End Bates | Number endorsed on last page of document. |
| Page Count | Total number of pages in document. |
| Beg Attach or Beg Family | Number endorsed on first page of first document in a family (*i.e.*, documents and all attachments thereto). |
| End Attach or End Family | Number endorsed on last page of last document in a family (*i.e.*, documents and all attachments thereto). |
| Redaction | Indication as to whether the document has been redacted. |
| Custodian / Source | Name of the person who had custody or control over the documents at the time of collection.  If not from a custodian, the field should indicate the non-custodial source of the documents (*e.g.*, "XX Central Files"). |