**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

MIGUEL COCA, et al.,                    )
                                        )
                   Plaintiffs,          )          Case No. 6:22-cv-01274-EFM-RES
                                        )
vs.                                     )
                                        )
CITY OF DODGE CITY, et al.,             )
                                        )
                   Defendants.          )
_____)

**<u>DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS</u>**

Plaintiffs seek extraordinary relief. With threadbare allegations, they ask to set aside a facially-neutral form of government that has been in place for more than 50 years and to, without any public debate, disenfranchise Dodge City voters and prevent the certification of their vote. Contrary to Plaintiffs' charge, Defendants are not attempting to redefine the pleading standards. No, Plaintiffs' case should be dismissed because it fails to state a claim, as the applicable law does not support Plaintiffs' theories and the well-pleaded allegations do not show an actual violation.

**I.    Plaintiffs have not stated a section 2 claim.**

**a.    There is no private cause of action under section 2.**

Plaintiffs' reliance on *Morse v. Republican Party of Va.*, 517 U.S. 186 (1996), (Doc. 48 at 12-13), flies directly in the face of Justice Gorsuch's concurrence in *Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2350 (2021), which explicitly states that "[the Supreme Court's] cases have assumed—without deciding—that the Voting Rights Act [("VRA")] of 1965 furnishes an implied cause of action under § 2." There is no way to square Plaintiffs' contention with Justice Gorsuch's concurrence—only one can be correct. Justice Gorsuch has the better position.

First, in the single Supreme Court section 2 case in which the private cause of action issue was raised, *City of Mobile v. Bolden*, 446 U.S. 55 (1980), the Supreme Court demurred,

"[a]ssuming, for present purposes" that it did (as the plaintiffs still lost), but citing cases indicating that it did not, *id.* at 60 & n.8. Following *Bolden*, Congress never amended section 2's language to address the private cause of action issue. While the Senate and House Judiciary Committees of the 97th Congress (1981-82) drafted reports contending that Congress had intended a private cause of action when the VRA was passed in 1965, S. Rep. No. 97-417; H.R. Rep. No. 97–227, these reports obviously are not substitutes for legislation nor can they, through just a few members of the then-existing body, speak for a Congress that existed and acted 15 years earlier.

Second, *Morse* is not a section 2 case; rather, it involved section 10 of the VRA. Plaintiffs nevertheless claim that the "reasoning" in *Morse*—*i.e.*, statements about section 2—is binding here because it was "'necessary to reach the judgment.'" (Doc. 48 at 12). However, Plaintiffs' argument seems out of place when applied to decisions like *Morse* where there was not a single majority decision, as there is no one agreed-upon and controlling rationale for the case.

Even if Plaintiffs' "reasoning" argument could be made in the fractured-opinion context, *Morse* still does not control here because Justices Breyer's and Stevens's comments about section 2 were not "necessary" for their conclusions regarding section 10. Starting with Justice Breyer's opinion, it was based on the conclusion "that the rationale" of *Allen v. State Bd. of Elecs.*, 393 U.S. 544 (1969), a section 5 case, should "appl[y] with similar force . . . to § 10." 517 U.S. at 240. While Justice Breyer implied that section 2 had a private cause of action, those intimations "pertain[] to a 'legal proposition not necessarily involved nor essential to determination of the case [at] hand'; thus, [they are] dicta, and [are] not controlling here." *Patrick v. Harrison Sch. Dist. No. 2*, 40 F. 4th 1186, 1210 (10th Cir. 2022) (citation omitted).

The same is true of Justice Stevens's opinion. Its analysis hinged upon the belief that the "evaluation of congressional action must take into account its contemporary legal context," 517

U.S. at 230-31, and that the "two observations [the Court made] about § 5 [in *Allen*—namely, that the VRA's "laudable goals could be severely hampered" without a private right and the Attorney General had asked that such a right be found—] appl[ied] as forcefully to § 10," *id.* at 231. Only after stating this did Justice Stevens go on to pavlovianly cite what the 97th Congress's Judicial Committees said about the earlier enacted section 2. *Id.* at 232. This citation and related statements, though, clearly were not essential to Justice Stevens's opinion, and, as such, are dicta.

Plaintiffs' fallback position that, even if the section 2 comments in *Morse* are dicta, they are still binding does not withstand scrutiny. (Doc. 48 at 12 n.6). Plaintiffs' position ignores the fact that courts are "not bound by dicta [that] ha[s] been repudiated by the holdings of . . . subsequent [Supreme Court] cases," *Kerry v. Din*, 576 U.S. 86, 94 (2015) (plurality op.), or dicta that "has been completely assumed and unreasoned," *Utah Republican Party v. Cox*, 892 F.3d 1066, 1110-11 (10th Cir. 2018). These exceptions apply as subsequent cases have dismissed *Allen*'s approach for finding causes of action, *see, e.g.*, *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855 (2017), and Justices Breyer's and Stevens's opinions provided no explanation for how section 2's text, and the VRA as a whole, create a private cause of action for section 2 despite their silence.

Left to face *Sandoval* analysis straight up, Plaintiffs' section 2 theory falls down. Starting with the private-right requirement, the two Supreme Court cases Plaintiffs cite do not actually stand for the proposition that section 2 is "concerned with 'whether the needs of . . . particular person[s like Plaintiffs] have been satisfied,'" which is needed to find that a private right has been bestowed, *Gonzaga Univ. v. Doe*, 536 U.S. 273, 290 (2002); rather, they merely show that the collective rights of a particular minority group cannot be "traded off" for the benefit of another minority group, *LULAC*, 548 U.S. 399, 437 (2006) ("Latinos in District 23"); *see also Shaw v. Hunt*, 517 U.S. 899, 917 (1996) ("black voters of the south-central to southeastern region").

As the private-right issue remains open, this Court must take a "fresh look at the statutory text." *Brnovich*, 141 S. Ct. at 2337. Considering subsections (a) and (b) of section 2, it is clear that, at most, only group rights were created. The *Gingles* analysis and its focus on "minority groups" confirms this fact. When assessing section 2 claims, courts do not analyze whether the preferred candidate of discrete individuals won; no, they look at the "minority group" of which a person purports to be a member to determine if a claim exists. Therefore, because section 2 is concerned about rights in the aggregate, not individual instances, *Sandoval*'s first requirement is not met.

The same is true for *Sandoval*'s private-remedy requirement. Plaintiffs offer no response to the arguments Defendants made based on *Arkansas State*, a case that dispelled each of Plaintiffs' contentions. For the reasons articulated in *Arkansas State*, section 2 has no private remedy.

Finally, regardless of how many section 2 cases have been brought by private plaintiffs, it does not justify permitting Plaintiffs' action to proceed because the private cause of action issue was not raised in those cases. *Az. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 144-45 (2011).

**b. Plaintiffs have failed to state a claim for relief, assuming such a claim exists.**

The *Gingles* factors consider three discrete things: (1) does a minority group form a majority in a single-member district; (2) does the group vote cohesively; and (3) do whites vote as a bloc. Each element must be supported by credible allegations. Plaintiffs do not meet this standard.

Starting with *Gingles I*, Plaintiffs do not propose districts, let alone allege facts that would enable the Court to reasonably infer that Latines could make up a majority-minority district. Saying South and West Dodge City does not cut it. Furthermore, Plaintiffs' "heat map" raises more questions than it answers: *e.g.*, what numbers is it based on—total population, VAP, or CVAP;[1] what is the distribution and integration levels of the Latine CVAP; what does orange mean, as the

---

[1]     Plaintiffs imply that CVAP and VAP are interchangeable. (Doc. 48 at 4 n. 2). They are not. (Doc. 38 at 9 n.6).

map's key indicates that the lightest shade of blue equals no Latines. In short, Plaintiffs' allegations fail to meet *Strickland*'s interpretation of *Gingles I*, and, as a result, their claim must fail.

Plaintiffs' allegations regarding *Gingles II* and *III* fare no better. Plaintiffs' position is that the Court must take them at their word. No, it doesn't. Unadorned recitations of a claim's factors are not to be credited. Relevant to *Gingles II* and *III*, the Amended Complaint does not permit this Court to reasonably infer that the candidates listed by Plaintiffs were actually the Latines' preferred candidates, that the Latine vote is unified, and/or that white voters vote in a bloc. At most, it is merely possible that these facts are present. That is not enough to survive a motion to dismiss.

## II.  Plaintiffs' Fourteenth and Fifteenth Amendment claims fail.

For a discrimination claim, a plaintiff must "show that the relevant decisionmakers" were motivated by a discriminatory purpose. *Dratz v. Johnson*, 1995 WL 406946, at *1 (10th Cir. July 11, 1995) (unpublished). Here, the claim is that the "continued use" of at-large elections is discriminatory. (Doc. 48 at 9). However, as pointed out in Defendants' motion, the Dodge City electorate, not its elected officials, is who decides whether at-large elections will continue. (Doc. 38 at 14). Plaintiffs stands silent on this point, which is dispositive and fatal to these claims.

## III.  Section 1983 does not save Plaintiffs' claims.

Plaintiffs allege that their § 1983 claims survive Defendants' motion because they have not been challenged. (Doc. 48 at 15). Their argument is incorrect. "[Section] 1983 by itself does not protect anyone against anything;" rather, it is reliant on an underlying violation of a federal right, which has not been shown here. *Gonzaga*, 536 U.S. at 285. Furthermore, as noted in Defendants' motion, section 2's "exclusive enforcement authority resides in the Attorney General." (Doc. 38 at 8). When a comprehensive enforcement scheme exists, individual enforcement under § 1983 is inappropriate. *Id.* at 298 n.5. Accordingly, § 1983 is of no help and this case should be dismissed.

Respectfully submitted,

FOULSTON SIEFKIN LLP

By: */s/ Anthony F. Rupp*
     Anthony F. Rupp, KS #11590
     Tara Eberline, KS #22576
     Sarah E. Stula, KS #27156
     7500 College Boulevard, Suite 1400
     Overland Park, Kansas 66210
     (913) 498-2100
     (913) 498-2101 (fax)
     trupp@foulston.com
     teberline@foulston.com
     sstula@foulston.com

     -and-

     Clayton Kaiser, KS #24066
     FOULSTON SIEFKIN, LLP
     1551 North Waterfront Parkway, Suite 100
     Wichita, Kansas 67206
     (316) 267-6371
     (316) 267-6345 (fax)
     ckaiser@foulston.com

ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I certify that on the 15th day of February 2023, the foregoing was electronically filed with the Clerk of the Court by using the Court's e-Filing system which will send notification of electronic filing to counsel for all parties of record, and a true and correct copy was served by electronic mail upon:

Sharon Brett
AMERICAN CIVIL LIBERTIES
UNION OF KANSAS
P.O. Box 917
Mission, Kansas 66201
sbrett@aclukansas.org
(913) 490-4100

Chad W. Dunn
Sonni Waknin
Bernadette Reyes
UCLA VOTING RIGHTS PROJECT
3250 Public Affairs Building
Los Angeles, California 90065
chad@uclavrp.org
sonni@uclavrp.org
bernadette@uclavrp.org
(310) 400-6019

Jonathan Topaz
Sophia Lin Lakin
AMERICAN CIVIL LIBERTIES
UNION, INC.
125 Broad Street, 18th Floor
New York, New York 10004
jtopaz@aclu.org
slakin@aclu.org
(212) 549-2500

Abena Mainoo
Jonathan I. Blackman
JD Colavecchio
Mijin Kang
Elizabeth R. Baggott
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
One Liberty Plaza
New York, New York 10006
amainoo@cgsh.com
jblackman@cgsh.com
jdcolavecchio@cgsh.com
mkang@cgsh.com
ebaggott@cgsh.com
(212) 225-2000

Scott Fuqua
FUQUA LAW & POLICY, P.C.
P.O. Box 32015
Santa Fe, New Mexico 87594
scott@fuqualawpolicy.com
(505) 982-0961

*/s/ Anthony F. Rupp*