IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| MIGUEL COCA and ALEJANDRO RANGEL-LOPEZ, | ) ) ) |
| Plaintiffs, | ) ) Case No. 6:22-cv-01274-EFM-RES |
| vs. | ) ) ) |
| CITY OF DODGE CITY, *et al.* | ) ) |
| Defendants. | ) ) ) |

**DEFENDANTS' NOTICE OF SUPPLEMENTAL AUTHORITY
IN SUPPORT OF THEIR MOTION TO AMEND AND CERTIFY (DOC. 79)**

Pursuant to D. Kan. Rule 7.1(g), Defendants notify the Court of a recent decision entered by a three-judge panel[1] in the case of *Simpson v. Thurston*, No. 22-213 (E.D. Ark. Filed May 25, 2023), *attached hereto as* Ex. A. In *Simpson*, the panel found that the plaintiffs, who were challenging the congressional districts drawn by the state legislature, failed to plausibly allege a Fourteenth Amendment Equal Protection claim, and, therefore, dismissed the claim.

The *Simpson* decision is relevant to Defendants' motion to amend and certify in at least two ways. First, the decision shows that, when a party fails to plausibly allege that the "body" responsible for the challenged action was motivated by race, as Plaintiffs have done here, evidence of "discriminatory impact" is not enough. (*See* Doc. 80, at 11-12). Second, the decision demonstrates that, under *Iqbal/Twombley*, and despite the "sensitive inquiry" language in *Village of Arlington Heights v. Metro Housing Development Corp.*, 429 U.S. 252, 262 (1977), courts are indeed dismissing discriminatory intent claims where a complaint's allegations are insufficient to

---

[1] The three-judge panel consists of Circuit Judge David Stras, Chief District Judge D.P. Marshall Jr., and District Judge James Moody Jr.

"create a plausible inference" of racial discrimination, which is the case here. (Doc. 80, at 12). Accordingly, *Simpson* supports Defendants' position that Defendants should be permitted to immediately appeal to the Tenth Circuit in order to obtain guidance on how the motion-to-dismiss standard should be applied in a "voter-dilution case like this . . . in a post-*Iqbal* and *Twombley* plausibility world." (Doc. 80, at 10).

Respectfully submitted,

**FOULSTON SIEFKIN LLP**

By: */s/ Anthony F. Rupp*
    Anthony F. Rupp, KS #11590
    Tara Eberline, KS #22576
    Sarah E. Stula, KS #27156
    7500 College Boulevard, Suite 1400
    Overland Park, Kansas 66210
    T (913) 498-2100 | F (913) 498-2101
    trupp@foulston.com
    teberline@foulston.com
    sstula@foulston.com

- and-

Clayton J. Kaiser, KS #24066
FOULSTON SIEFKIN, LLP
1551 North Waterfront Parkway, Suite 100
Wichita, Kansas 67206
T (316) 267-6371 | F (316) 267-6345
ckaiser@foulston.com

ATTORNEYS FOR DEFENDANTS

**CERTIFICATE OF SERVICE**

I certify that on the 30th day of May 2023, the foregoing was electronically filed with the Clerk of the Court by using the Court's e-Filing system which will send notification of electronic filing to counsel for all parties of record, and a true and correct copy was served by electronic mail upon:

Sharon Brett, KS #28696
**AMERICAN CIVIL LIBERTIES UNION OF KANSAS**
sbrett@aclukansas.org

Chad W. Dunn *(Pro Hac Vice)*
Sonni Waknin *(Pro Hac Vice)*
Bernadette Reyes *(Pro Hac Vice)*
**UCLA VOTING RIGHTS PROJECT**
chad@uclavrp.org
sonni@uclavrp.org
bernadette@uclavrp.org

Jonathan Topaz *(Pro Hac Vice)*
Sophia Lin Lakin *(Pro Hac Vice)*
Luis M. R. Roman *(Pro Hac Vice)*
**AMERICAN CIVIL LIBERTIES UNION, INC.**
jtopaz@aclu.org
slakin@aclu.org
lroman@aclu.org

Abena Mainoo *(Pro Hac Vice)*
Jonathan I. Blackman *(Pro Hac Vice)*
JD Colavecchio *(Pro Hac Vice)*
Mijin Kang *(Pro Hac Vice)*
Elizabeth R. Baggott *(Pro Hac Vice)*
**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
amainoo@cgsh.com
jblackman@cgsh.com
jdcolavecchio@cgsh.com
mkang@cgsh.com
ebaggott@cgsh.com

Scott Fuqua *(Pro Hac Vice)*
**FUQUA LAW & POLICY, P.C.**
scott@fuqualawpolicy.com

*ATTORNEYS FOR PLAINTIFFS*

                    */s/ Anthony F. Rupp*

Case 6:22-cv-01274-EFM   Document 103   Filed 05/30/23   Page 4 of 9
Case 4:22-cv-00213-JM-DRS-DPM   Document 43   Filed 05/25/23   Page 1 of 6

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

_____

No. 4:22-cv-213
_____

Jackie Williams Simpson, *et al.*

Plaintiffs,

v.

John Thurston, *et al.*

Defendants.
_____

Before STRAS, Circuit Judge, MARSHALL, Chief District Judge, and MOODY, District Judge.

_____

**Memorandum Opinion and Order**

PER CURIAM.

    We provided additional time to allow the plaintiffs to amend their complaint. Having reviewed the amendments, we grant the motion to dismiss. The allegations do not create a plausible inference that race was the "predominant factor" behind the adoption of Arkansas's new congressional map. *Easley v. Cromartie*, 532 U.S. 234, 241 (2001) (emphasis omitted) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 547 (1999)).



I.

The plaintiffs' theory in the amended complaint is the same as before: vote dilution. *See* U.S. Const. amends. XIV, XV; Ark. Const. art. 2, § 3.[1] In their view, the map adopted by the Arkansas General Assembly following the 2020 Census "cracks" the black community by "dispers[ing] [them] into districts in which they constitute an ineffective minority." *Bartlett v. Strickland*, 556 U.S. 1, 14 (2009) (plurality opinion) (quoting *Thornburg v. Gingles*, 478 U.S. 30, 46 n.11 (1986)).

One of the key elements of a cracking claim is a "discriminatory purpose," *Reno v. Bossier Par. Sch. Bd.*, 520 U.S. 471, 481 (1997), which requires the complaint to allege facts creating a plausible inference that race was the "*predominant* factor" in the redistricting process, *Easley*, 532 U.S. at 241 (quoting *Hunt*, 526 U.S. at 547). Both "circumstantial and direct evidence of intent" count. *Hunt*, 526 U.S. at 546 (quoting *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1997)).

The amended complaint contains some new allegations. A few are "contemporary statements by members" of Arkansas's General Assembly—the body that passed the map. *Arlington Heights*, 429 U.S. at 268 (explaining that these statements "may be highly relevant" in assessing purpose). The problem is that they mostly contradict the inferences of racial discrimination the plaintiffs ask us to draw.

Consider what the map's sponsor said. In response to a question about race from another legislator, she explained, "I don't think we've looked at any maps at all across the state to decide whether something was African-American or white or

---

[1]As before, we assume without deciding "that vote-dilution claims can come in both a Fourteenth and Fifteenth Amendment package." [Mem. Op. & Order 7–8.]

-2-

whatever the case may be." [Am. Compl. ¶ 50.] Or consider the statement of another legislator, a committee chair, who declared that the General Assembly was not "using racial demographics to draw maps." [*Id.* ¶ 51.]

Indeed, even the opponents of the new congressional map did not think racial animus played a role. One said she "hadn't heard anybody make allegations of racism." [*Id.* ¶ 65.] Another summarized the opposition as focused on "the *impact* of this map," not its "intent." [*Id.*] The point is that these statements belie the notion that race played a role in drawing the map, much less a "*predominant*" one. *Easley*, 532 U.S. at 241 (quoting *Hunt*, 526 U.S. at 547).

To be sure, some opponents of the map spoke out in stronger terms. One legislator described it as "prejudiced," and another claimed that "[t]he districts ha[d] been manipulated based solely on race." [Am. Compl. ¶ 65.] The problem is that these two accusations of racial bias fail to create a plausible inference "that the legislature *as a whole* was imbued with racial motives." *Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2350 (2021) (emphasis added). At least not here, when the statements themselves are conclusory, and members of both parties have claimed the opposite was true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009); *see also Butts v. City of New York*, 779 F.2d 141, 147 (2d Cir. 1985) (explaining "that the speculations and accusations" of a law's opponents "do not support an inference of . . . racial animus").

The plaintiffs apparently recognize the problem. They urge us to draw a negative inference from the absence of racially charged rhetoric. [Am. Compl. ¶ 52.] Most legislators did not mention race, they claim, so they must have been trying to hide their true motive.

This argument does not work. After all, we have to presume that the General Assembly acted in "good faith." *Abbott v. Perez*, 138 S. Ct. 2305, 2324 (2018) (quoting *Miller v. Johnson*, 515 U.S. 900, 915 (1995)). So even if legislators were

"*aware* of race when [they] dr[ew] [the] district lines," as the complaint suggests, we cannot simply leap to the conclusion that they were lying about their motives. *Bethune-Hill v. Va. State Bd. of Elections*, 580 U.S. 178, 187 (2017) (quoting *Shaw v. Reno*, 509 U.S. 630, 646 (1993)).

Nor can the remaining allegations establish a plausible vote-dilution claim. One is that the map "was rushed," [Am. Compl. ¶ 43,] but "the brevity of the legislative process" cannot, on its own, "give rise to an inference of bad faith—and certainly not an inference that is strong enough to overcome the presumption of legislative good faith." *Abbott*, 138 S. Ct. at 2328–29. Another is that the map came "from an unknown source . . . outside the Legislature." [Am. Compl. ¶ 39.] But even assuming the General Assembly "[d]epart[ed] from the normal procedural sequence" during the redistricting process, *Arlington Heights*, 429 U.S. at 267, nothing suggests that it did so "to accomplish a discriminatory goal," *Rollerson v. Brazos River Harbor Navigation Dist.*, 6 F.4th 633, 640 (5th Cir. 2021); *see Veasey v. Abbott*, 830 F.3d 216, 238 (5th Cir. 2016) (en banc) (discussing the "numerous and radical procedural departures" that might "lend credence to an inference of discriminatory intent"). And finally, a "history of racial discrimination" fails to establish discriminatory intent, [Am. Compl. ¶ 120,] at least when it is not "reasonably contemporaneous" with the adoption of the new map, *McCleskey v. Kemp*, 481 U.S. 279, 298 n.20 (1987). *See Abbott*, 138 S. Ct. at 2324 ("[P]ast discrimination cannot, in the manner of original sin, condemn governmental action that is not itself unlawful." (quoting *City of Mobile v. Bolden*, 446 U.S. 55, 74 (1980) (plurality opinion))).

All that remains, like before, is "discriminatory impact." [Am. Compl. ¶ 61 (emphasis omitted).] In our previous order, we noted that the complaint itself identified reasons for it besides race. The first was "achiev[ing] numerical equality between the [d]istricts." [Am. Compl. ¶ 69]; *see Wesberry v. Sanders*, 376 U.S. 1, 17–18 (1964) (discussing the one-person, one-vote principle). The other was pure "partisan gerrymandering," designed to bolster the Republican Party's electoral

prospects across Arkansas. [Am. Compl. ¶ 3]; *see Rucho v. Common Cause*, 139 S. Ct. 2484, 2506–07 (2019) (recognizing "that partisan[-]gerrymandering claims present political questions beyond the reach of the federal courts"). Neither is actionable, and both are "obvious alternative explanation[s]" that make a *predominant* racial motive implausible. *Iqbal*, 556 U.S. at 682 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 567 (2007)).

## II.

One last housekeeping item. Our previous order deferred ruling on "Count[] . . . VI" to allow the plaintiffs to file an amended complaint. [Mem. Op. & Order 15–16.] The original complaint, however, contained two Count VI's: a vote-dilution claim under the Arkansas Constitution and a claim under § 2 of the Voting Rights Act. [Compl. ¶¶ 144–56.] We now clarify that we intended to defer ruling on the state constitutional claim and dismiss the § 2 claim with prejudice. [*Compare* Mem. Op. & Order 8 n.2 ("[I]f the federal vote-dilution claims survive, so does the one under state law."), *with id.* at 12 ("[T]he plaintiffs have candidly admitted that there is no way they can state a claim under § 2 of the Voting Rights Act.").] Now, having fully considered the allegations in the amended complaint, we dismiss both claims with prejudice.

III.

Based on the foregoing, we hereby order that:

1. The defendants' motion to dismiss the plaintiffs' first amended complaint is **GRANTED**. All counts are dismissed with prejudice.

2. The defendants' motion to dismiss with respect to Counts IV, V, and VI of the original complaint is **DENIED AS MOOT** given the filing of the amended complaint.

3. The plaintiffs' motion to dismiss the State of Arkansas as a defendant is **GRANTED**.

IT IS SO ORDERED this 25 day of May, 2023.

_____