# EXHIBIT U

| | |
|---|---|
| **From:** | Nannette Pogue |
| **Sent:** | Tuesday, March 5, 2019 1:37 PM CST |
| **To:** | Brad Ralph; Brad Ralph |
| **Subject:** | FW: Dodge City |

FYI

**From:** Eric Smith [mailto:esmith@lkm.org]
**Sent:** Thursday, February 28, 2019 4:06 PM
**To:** Nannette Pogue <nannettel@dodgecity.org>
**Subject:** FW: Dodge City

Nannette,

I am forwarding what one of our law student externs found concerning your question on transforming from at large elections to election by ward. I think Matt has some very valid points and at least gives you some potential issues the city will need to think about.

**Eric B. Smith**
Deputy General Counsel,
Member Services & Operations
League of Kansas Municipalities

esmith@lkm.org
300 SW 8th Ave., Suite 100
Topeka, KS 66603
Phone: (785) 354-9565
Cell:    (785) 633-7395
Fax:     (785) 354-4186



**From:** Extern <Extern@lkm.org>
**Sent:** Wednesday, February 27, 2019 3:22 PM
**To:** Eric Smith <esmith@lkm.org>
**Subject:** Dodge City

The statutes governing redistricting in cities of the first-class have been repealed and those cities are subject to the guidelines established by judicial decisions and other procedures instituted by a city's own set of codes and ordinances.

Dodge City would need to pass an ordinance establishing that they will be electing their commissions by single-member districts, rather than through their current at-large process. The newly enacted districts would need to satisfy several judicially created criteria to withstand any possible judicial scrutiny. Case law has created the guideline that election districts, at a minimum, need to be redrawn at least every ten years on the state and local levels to reflect population shifts. Generally, the largest district can have a population no greater than ten percent larger than the smallest district. Although having a total deviation of ten percent or less does not guarantee a safe harbor as evidence of discrimination, usually racial, can be provided to invalidate an electoral district map.

As of the 2010 United States Census, the racial makeup of Dodge City was 72.5% White, 2.5% African American, 1.1% American Indian, 1.6% Asian, 0.2% Pacific Islander, 19.3% from other races, and 2.9% from two or more races. Hispanics and Latinos of any race were 57.5% of the population.

Dodge City would need to be careful to not dilute the voting power of Hispanic and Latino voters in any map that is adopted. Section 2 of the Voting Rights Act deals with this issue and the Supreme Court established a list of conditions under *Thornburg v. Gingles*. The test looks at (1) whether it is possible to draw a district so that a majority of voters belong to a geographically "compact" racial, ethnic, or language minority community, (2) whether the minority population usually votes as a bloc, for the same type of candidate, and (3) whether the rest of the population in the area usually votes as a bloc for different candidates than those preferred by the minority community. If the three threshold conditions above have been met, courts then look to the "totality of the circumstances" to determine whether the minority vote has been diluted.

Based on my experience with Kansas politics, prong (2) and (3) will likely be met, therefore the city must really look at the geography of the city and decide whether Hispanic influence or opportunity districts need to be created to avoid violating the first prong of *Gingles*. The ACLU has a history of taking stances in redistricting cases and with voting site questions already in the news, this may be a decision they scrutinize.