IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| MIGUEL COCA and ALEJANDRO RANGEL-LOPEZ, )<br>)<br>) | |
| Plaintiffs, ) | Case No. 6:22-cv-01274-EFM-RES |
| vs. ) | |
| CITY OF DODGE CITY, ) | |
| Defendant. ) | |

### DEFENDANT'S BENCH BRIEF REGARDING
### PLAINTIFFS' ANTICIPATED EXHIBITS 41, 143, AND 144

Defendant anticipates that Plaintiffs will attempt to offer as evidence a collection of documents marked as Exhibit 41 pertaining to a report made by the Dodge City Police Chief to the Attorney General related to a June 29, 2023 public meeting. In addition, Defendant anticipates that Plaintiffs will offer Exhibits 143 and 144, which are supplemental expert reports from January of 2024, opining on Exhibit 41.

If offered, Defendant submits that Exhibit 41 should be excluded under Fed. R. Evid. 401 and 403 as set forth below. In addition, Defendants submit that the exhibit is hearsay and is untimely.

If offered, Defendant submits that Exhibits 143 and 144 should be excluded because they rely on Exhibit 41 and because they do not meet the standards for expert testimony under Fed. R. Evid. 702 and 703. No *Daubert* motion could have been filed on this matter by the *Daubert* deadline because these supplemental reports were not provided to Defendant until January 12, 2024.

**Exhibit 41**

After the close of discovery, news reports identified an email from Dodge City Police Chief Drew Francis to Kansas Attorney General Kris Kobach pertaining to "a public informational event on June 29th, 2023, one of many happening in reference to HB2350." Exhibit 41. The Chief's email states that the "report is simply documenting the content of the public meeting and is therefore unclassified and open to the public." The Chief advises General Kobach, "My interest is in protecting the department's community relations and trust." A report from Officer Soto is attached to the email.

HB2350 is an anti-human trafficking law passed overwhelmingly by the Kansas Legislature. Chief Francis's email states his view that any description of the law as targeting the Latino community is "misinformation" that exploits "the very community these advocacy groups claim to advocate for the protection of." Exhibit 41.

Neither Chief Francis nor the Kansas Attorney General are on any party's witness list, nor have they been deposed. Nothing about Exhibit 41 pertains to elections or the opportunity to participate in the political process. Nothing in the exhibit suggests that the Dodge City Police Department has engaged or will engage in any inappropriate treatment of Latinos. To the contrary, Chief Francis advises the Attorney General that the group is "waiting for some direction to KS LE [Kansas Law Enforcement] from the KS AG's Office…]."

Exhibit 41 consists of a series of hearsay documents with no one to lay the foundation for them. While Defendant agrees that this information was new to the Plaintiffs after the close of discovery, offering these irrelevant documents at the last minute nonetheless inserts an untimely exhibit on an irrelevant issue.

**Exhibits 143 and 144**

Plaintiffs have identified Exhibit 143, an addendum to Dr. Bejarano's expert witness report, and Exhibit 144, an addendum to Dr. Martinez's expert report.

Dr. Bejarano opines that Exhibit 41 demonstrates a "lack of responsiveness on the part of local officials to the particularized needs of Latinos." She claims that "Chief Francis shared the surveillance with Attorney General Kobach, whom I previously highlighted as a highly contentious figure due to his open hostility toward the Latino and immigrant communities in Kansas." There are no citations in Dr. Bejarano's report other than to Exhibit 41.

Dr. Martinez likewise opines that Chief Francis's concerns about "misinformation" "reflect institutional racial dynamics wherein the Hispanic community is targeted as a potential problem rather than one deserving of attention." There are similarly no citations in Dr. Martinez's report other than to Exhibit 41.

## I.   Exhibit 41 should be excluded under Fed. R. Evid. Rule 401 or 403, as hearsay and as untimely.

Exhibit 41 has no "tendency to make a fact more or less probable than it would be without the evidence" Here, it is unclear what purported "fact" is "of consequence in determining the action." Accordingly, Exhibit 41 fails to meet the threshold test for relevant evidence under Rule 401.

However, even if the Court deems Exhibit 41 to be relevant, it should be excluded under Rule 403. This exhibit confuses the issues and wastes the Court's time engaging in speculation about legislative intent for unrelated legislation, the motivations of the non-witness police chief who is not a decision-maker on any issue before the Court, and whether the Attorney General is fairly criticized.

Plaintiffs offer no foundation for this hearsay exhibit and have listed no one on their witness list who can testify from personal knowledge regarding it. Whether a bill passed by the Kansas legislature is reasonable is simply not an issue before this Court. Likewise, whether the police chief chose the best method of gathering and reporting the information to the General is unrelated to any issue before this Court.

**II.     Exhibits 143 and 144 should be excluded under Fed. R. Evid. 702 and 703.**

Plaintiffs have chosen to supplement two expert reports on an issue that has nothing to do with elections, yet they have not supplemented their expert report on an issue that actually does. There was an intervening City Commission election in November of 2023, following the issuance of Dr. Barreto's expert report on racially polarized voting in elections in Dodge City. Dr. Barreto did not supplement his report. The decision to supplement on an irrelevant issue while failing to supplement on a relevant issue is telling.

Rule 702(a) permits expert testimony only when "the expert's scientific, technical or other specialized knowledge with help the trier of fact to understand the evidence or to determine a fact issue." Dr. Bejarano and Dr. Martinez bring no specialized knowledge to assist the Court to understand the evidence or to determine a relevant fact issue. While they insert their own advocative interpretations of the purposes of the legislation, the motivation of the Attorney General, and how they would have proceeded differently from the manner chosen by the Chief, they have no scientific, technical, or other specialized knowledge to opine on these issues.

Rule 702(b) requires that the testimony be based on sufficient facts and data. But neither Chief Francis nor the Attorney General is a witness. The conclusions reached are entirely speculative.

Rule 702(c) requires that the "testimony is the product of reliable principles and methods." However, no principles or methods are identified.

Rule 702(d) requires that "the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Given that no principles and methods were applied at all, there is no basis for the opinions.

Even when an expert relies on hearsay under Rule 703, "the underlying information is not admissible simply because the opinion or inference is admitted." Fed. R. Evid. 703 advisory committee's note to 2000 Amendment ("Rule 703 has been amended to emphasize that when an expert reasonably relies on inadmissible information to form an opinion or inference, the underlying information is not admissible simply because the opinion or inference is admitted."). The plaintiffs, accordingly, cannot present hearsay evidence through the back door that they must otherwise present through the front. *See Stover v. Eagle Prods., Inc.*, No. 93-4047-SAC, 1996 WL 172972, at *11 (D. Kan. Mar. 19, 1996) ("An 'expert' opinion based upon the speculation of others retains the inherent uncertainty which would preclude the introduction of the speculative opinions of others in the first instance. The plaintiffs cannot bring through the back door what they cannot bring in through the front.").

Both Drs. Martinez and Bejarano impermissibly weigh Chief Francis's credibility. Chief Francis's intent in the email is clear—namely: (1) "[m]y interest is in protecting the department's community relations and trust"; and (2) to gather information because he understood there were "advocacy groups spreading a lot of misinformation in regards to HB2350." Neither Dr. Martinez nor Dr. Bejarano purport to be an expert on a witness's credibility, nor does their professional background support any such expertise.

Drs. Bejarano and Martinez draw impermissible conclusions from Chief Francis's email in any event. Dr. Bejarano opines that the email is "evidence of a lack of responsiveness on the part of local officials to the particularized needs of Latinos in Dodge City." Exhibit 143. Dr. Martinez opines that the email reflected "institutional racial dynamics wherein the Hispanic community is targeted as a potential problem rather than one deserving of protection." Exhibit 144. Again, however, Chief Francis wrote the opposite—that he was countering a narrative that "serves to advance the insulation and protection of the human traffickers and smugglers exploiting the *very community*" both he and the law were responsive to and intended to protect. (emphasis added) *See League of Women Voters of Fla., Inc. v. Fla. Sec'y of State*, 66 F.4th 905, 927-32 (11th Cir. 2023) (reversing district court's rejection of legislators' race-neutral justifications for a Florida law that regulated ballot drop boxes, voter solicitation, and the delivery of voter-registration forms).

Finally, Dr. Bejarano's and Dr. Martinez's addenda are irrelevant to the Plaintiffs' Fourteenth Amendment claim, which requires the Plaintiffs to show that a Dodge City *decisionmaker* has acted with discriminatory intent specifically in maintaining at-large elections. *See* Am. Compl., ECF No. 30 at 25 ¶ 119 (alleging only that "[t]he at-large method of election used by Dodge City for the Dodge City Commission discriminates against Plaintiffs on the basis of race and national original"); *see also Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979) (requiring proof that a relevant "decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group"). Here, however, the Police Chief has no relevant decision-making authority when it comes to Dodge City's electoral processes. *But see* K.S.A. 25-2303(a) (making county elections officers "responsible for administering" elections).

For the reasons set forth above, Defendant will assert an objection if Exhibits 41, 143, and 144 are offered. Defendant will seek a ruling from the Court if the Plaintiffs offer these exhibits.

Respectfully submitted,

**FOULSTON SIEFKIN LLP**

By: */s/ Anthony F. Rupp*
    Anthony F. Rupp, KS #11590
    Tara Eberline, KS #22576
    Sarah E. Stula, KS #27156
    7500 College Boulevard, Suite 1400
    Overland Park, Kansas 66210
    T (913) 498-2100 | F (913) 498-2101
    trupp@foulston.com
    teberline@foulston.com
    sstula@foulston.com

- and-

    Clayton J. Kaiser, KS #24066
    Samuel J. Walenz, KS #29114
    FOULSTON SIEFKIN, LLP
    1551 North Waterfront Parkway, Suite 100
    Wichita, Kansas 67206
    T (316) 267-6371 | F (316) 267-6345
    ckaiser@foulston.com
    swalenz@foulston.com

**ATTORNEYS FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I certify that on the 25th of February 2024, the foregoing was electronically filed with the Clerk of the Court by using the Court's e-Filing system which will send notification of electronic filing to counsel for all parties of record.

*/s/ Anthony F. Rupp*