## Bingesser, Matt

| | |
|---|---|
| **From:** | Drew Francis <drewf@dodgecity.org> |
| **Sent:** | Friday, June 30, 2023 1:58 PM |
| **To:** | Kobach, Kris |
| **Cc:** | kkobach@gmail.com |
| **Subject:** | Community informational events re: HB2350 |
| **Attachments:** | officers report final.doc |

**CAUTION:** This email originated from outside of the Office of The Attorney General of Kansas organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

AG. Kobach,
Please review the attached Officer's Report from my department regarding an organized public informational event on June 29th, 2023, one of many happening across KS, in reference to HB2350. The report is simply documenting the content of the public meeting and is therefore unclassified and open to the public.
I assigned a plainclothes detective of my department to attend this for observation and to report on the content of the information being pushed out to our community members. My interest is in protecting the department's community relations and trust. I have heard there are many advocacy groups spreading a lot of misinformation in regards to HB2350, specifically advising that this will be used by KS LE agencies to harass and discriminate against the Hispanic community, and therefore it is not safe for the Hispanic community to talk to police. After reviewing the report myself, I believe this is a direct assault on the police and public unity, and partnership. One that only serves to advance the insulation and protection of the human traffickers and smugglers exploiting the very community these advocacy groups claim to advocate for the protection of.

They also state that they are waiting for some direction to KS LE from the KS AG's Office, and until that happens, too much is "unclear", so the best advice is to avoid police encounters and do not talk to them without an attorney.
Please review the report and let me know if you have any questions or want anything further.

Thank you,
Drew



**DREW FRANCIS**
CHIEF OF POLICE
*drewf@dodgecity.org*

POLICE DEPARTMENT

110 W. Spruce St.
Dodge City Kansas 67801
**620.225.8126**

\*\*\*Hearing and/or speech-impaired persons using a TDD/TTY may contact City Staff through the Kansas Relay Center at 711 or 1-800-766-3777.

1

**PLAINTIFFS' EXHIBIT 41**

PLS_000236

Officer's Report

Date 06/30/2023

Officer: J. Soto D336

Attention: Chief D. Francis

Subject: Meeting regarding Kansas HB2350

      On June 28, 2023 at 1800 hours I attended a meeting at the Dodge City Public Library regarding Kansas House Bill 2350. The meeting was organized by the Kansas Hispanic & Latino American Affairs Commission (KHLAAC), which is part of the Kansas Governor's Office, the Latinx Education Collaborative, Advocates for Immigrant Rights and Reconciliation (AIRR), and the United Food & Commercial Workers Union Local 2 (UFCW2). Before arriving, I placed my bodycam in a cargo pocket of my pants and was able to record audio of the meeting. The video is saved under secondary tag 001 and categorized as pending review.

      While present I saw a few Hispanic families including adults and children. I also saw Assistant City Manager Melissa McCoy, who operated the projector and took notes, and the Director of Development Services and Inspections Kevin Israel, who was accompanied by employees of Conant construction. I also saw Dodge City Police Department auxiliary member and Vice Chair of Ford County Democrats Jose Garcia present in the audience. I estimated approximately 15 people in attendance.

      The first part of the presentation was led by the KHLAAC Chair Commissioner Monica Vargas Huertas, Esq. Huertas also serves as the Political and Community

Outreach Director for UFCW. Serving as translator was Carlos Wriedt, the CFO for the Community Service Council in Tulsa, Oklahoma.

Huertas' presentation was written and spoken in Spanish and the title of the slideshow was, "Is HB2350 an anti-immigrant law?" Huertas said she would present the facts and allow the audience to draw their own conclusions. Huertas began her presentation explaining the separate elements of HB2350. Huertas criticized what she described as "the vague language" regarding the section of the statute which says, "Benefits financially or receives anything of value". Huertas said there is no clear definition of what "anything of value" means.

Huertas said the third element of the statute which reads, "Knows, or should have known, that the individual being smuggled is likely to be exploited for the financial gain of another". Huertas pointed out the statute does not obligate the prosecution to prove a causal link between the person transporting, harboring, or concealing an illegal alien and the actual exploitation of an illegal alien. Huertas explained the bill is designed to penalize the person transporting or harboring an illegal alien and not the actual exploiter.

Huertas explained the statute categorizes human smuggling as a severity level 3 person felony. Huertas explained the crime of human smuggling carries a possible prison sentence and fines. Huertas said citizens could take some relief in the fact the bill does not carry deportation as a possible sentence. Huertas pointed out the statute would also penalize documented citizens who transport or harbor illegal aliens, not only illegal aliens who are transporting or harboring other illegal aliens.

Huertas said the new bill was superfluous because K.S.A 21-5426 has been in effect since 2012. Huertas said K.S.A. 21-5426 already criminalizes exploiting illegal aliens for financial gain referencing the first section of the statute.

Huertas circled back to the "vague language" of the statute and said the most important thing to consider is the fact it was not necessary to prove a causal link exists between the transporter of an illegal alien receiving "anything of value" and the illegal alien being exploited by another party. Huertas said HB2350 equally penalizes transporting or harboring an illegal alien and exploiting them.

Huertas went on to ask how anyone could possibly know another person's legal status or if they are being exploited. Huertas said HB2350 opens the door for "higher prosecution" but did not explain how. Huertas asked the audience "Why make this law when one already exists?"

Huertas said K.S.A. 21-5426 is "more technical" and "is more clear about what must be brought to court for conviction". Huertas pointed out K.S.A 21-5426 uses the language "any person" while HB2350 specifically references illegal aliens.

Huertas then asked the Audience "Who does this law protect?". Huertas explained the history of HB2350. Huertas said when HB2350 was originally drafted it lacked the two elements regarding receiving anything of value and knowing the illegal alien would be exploited. Huertas said the original draft of HB2350 made transporting an illegal alien a felony on its own. Huertas said only after intense debate the second and third elements were added.

Huertas said in later drafts of HB2350 the language of the first section of the statute was amended. Huertas said the section of HB2350 which now reads, "Knows, or

should have known" originally read "with reckless disregard in exchange for anything of value". Huertas criticized how anyone could have reckless disregard for another person's legal status.

Huertas said HB2350 is intended to punish people who transport or harbor illegal aliens and not people who exploit illegal aliens. Huertas said only after "the most intense debates" the three elements now included in the statute were finally introduced.

Huertas reminded the audience of their presumption of innocence and explained the burden of proving all three elements of the crime lie on the prosecution.

The next section of Huertas' presentation was what she defined as "practical cases" of the application of HB2350. Huertas gave different scenarios and spoke about whether the scenario could result in criminal charges arising from HB2350. The scenarios are as follows:

- If I take my undocumented unemployed spouse on a family trip could I be charged?

Huertas said "No" because the second two elements could not be proven.

- If I give my undocumented friend a ride somewhere and they give me gas money could I be charged?

Huertas said "No" because that scenario would not fulfill the element regarding exploitation.

- If I live in a home of mixed legal status and my undocumented family member contributes financially with wages paid from fair employment which pays a legal wage could I be charged?

Huertas said "No".

- If I transport someone to a job where they are treated unfairly (paid less than minimum wage, do not provide safety equipment etc.) could I be charged?

Huertas said it is "unclear" and it would most likely depend on the prosecutor to decide.

- If I live in a home of mixed legal status and my undocumented family member contributes financially with wages earned at a job which treats them unfairly could I be charged?

Huertas said it is "unclear". Huertas said in this scenario the undocumented family member is exploited at their job. Huertas said it is common knowledge that immigrants are often paid less than their citizen counterparts.

- If I do social work or community service and I house a minor while they pay off a debt through exploitive work could I be charged?

Huertas said this scenario touches on the most argued points and the answer is "unclear". Huertas said the accuser would have to prove the person harboring the minor received "anything of value". Huertas highlighted that "anything of value" does not need to be related to the actual exploitation of the minor.

Huertas transitioned to the next section of her presentation by asking the audience, "What can we do to protect ourselves?"

Huertas posed the question What can I do during contact with legal authorities while I am transporting someone who does not have legal status?"

Huertas reminded the audience they have the right to remain silent and that anything they say could be used against them. Huertas said anyone can refuse to answer questions regarding their or someone else' legal status.

Huertas said anyone has the right to record police interactions and police cannot prevent them from recording. Huertas said not all police record their interactions with the public due to policy or budget constraints.

Huertas explained the difference between a temporary detention and an arrest. Huertas said police have the right to detain someone while they contact ICE or verify someone's legal status.

Huertas highlighted the fact that HB2350 applies to someone transporting an illegal alien, not to the illegal alien themselves. Huertas did not explicitly say, but implied that an illegal alien could not be detained in relation to HB2350, but someone transporting them could be detained.

Huertas urged the audience to be careful about requests to accompany police to a police department for further questioning. Huertas said going voluntarily to a police department for questioning could be misconstrued as consent.

Huertas said the best course of action during a police interaction is to ask if you are free to go. Huertas said if the police say you are not free to go to ask if you are detained or arrested and why.

Huertas said if someone is arrested the officer needs to prove probable cause for the arrest and read and abide by the arrestee's Miranda rights. Huertas said the most important thing to consider during police interactions is a person's right to remain silent. Huertas said never speak to police without an attorney present.

Huertas said never to run from police. Huertas said running from police would give them probable cause for an arrest.

Huertas gave the example of a traffic stop where the driver has no license. Huertas said driving without a valid license is a misdemeanor offense and it is better to receive a ticket and go to court with a lawyer than to speak to police and risk being charged with a felony.

Huertas said the most important advice she could give was to never sign any document without an attorney present. Huertas said police documents are highly technical and it is best to have a lawyer present who can understand and explain the documents before someone signs them.

Huertas said in order to protect the community it is important to never ask clients, patients, or customers questions regarding their legal status. Huertas said businesses have no obligation to keep records regarding their clients' legal status and urged against keeping such documentation.

Huertas said her organization provides "know your rights" cards which could be handed to a police officer instead of talking to them. Huertas said it is also important to have a plan in case the main source of income in a household is taken into detention. Huertas showed an "ICE family preparedness plan" on screen. Huertas said it is also important for immigrants to develop relationships with immigration lawyers and defense attorneys in case they are needed as a result of HB2350.

Huertas asked "What can I do if I work closely with the immigrant population?" Huertas advised businesses to designate a single person to handle police interactions. Huertas said to train all other employees not to answer questions regarding immigration. Huertas said the person in charge of speaking to police should make it clear they do not consent to police entering or searching the business. Huertas said if

the police say they will return with a warrant to contact a lawyer and try to have them present before police return.

Huertas said if a search is conducted it is important to document police conduct with photos and detailed notes which can be used as evidence in court. Huertas said before a search is conducted it is important to review the warrant carefully to be sure officers are adhering to the scope of the search. Huertas said a warrant which authorizes an inspection of a business is not the same as a warrant authorizing the search of a business. Huertas said if a search is being conducted the only information anyone needs to provide to police is their real name.

Huertas reminded the audience HB2350 is a state law and violators of the law could not be held in a federal detention facility or be deported. Huertas said the law targets those transporting illegal immigrants and poses no risk for illegal immigrants.

Huertas said the supreme court recently published an opinion that state courts cannot challenge the discretion of federal agencies or courts. Huertas said ICE has stated their priorities are to deport illegal aliens that pose a threat to national security, public safety, or border security. Huertas said during 2021 the priority was to deport any illegal alien who arrived in the U.S. during the last two years. Huertas said this priority later changed to any illegal alien within 150 miles of the southern border. Huertas said the current administration uses their discretion to target illegal aliens who pose threats to public safety. Huertas said ICE can exercise their discretion as they see fit and HB2350 does not give Kansas the ability to challenge that discretion.

Huertas ended her presentation by urging listeners to protect themselves by always recording police interactions, never answering questions and reminded the

audience to never run from police because that would only give probable cause for an arrest.

Huertas then fielded two questions from the audience. One question was unrelated to HB2350 and Huertas explained how a notary could not be charged under this bill because a notary would not transport or harbor an illegal alien.

The second question was regarding the Miranda warning and how a Spanish speaking person could be sure officers were accurately reading them their rights after an arrest. Huertas explained it is not always possible for agencies to have a bilingual officer available. Huertas said a non-Spanish-speaking officer has no obligation to read a person their Miranda warning in Spanish. Huertas said it is important for each person to know their rights before they are contacted by police.

The second half of the meeting was led by Carla Rivas-D'Amico who is the Executive Director of the KHLAAC. Edgar J. Palacios, CEO of the Latinx Education Collaborative in Kansas City and another speaker whose name is unknown to me also contributed to the second half of the presentation.

D'Amico's presentation was regarding government functions and she urged everyone present to become involved in their own government. D'Amico's presentation would best be categorized as lobbying for the current Governor of Kansas.

D'Amico's presentation had little to do with HB2350 other than her speaking about how the current governor was not in favor of it and vetoed it. At least one family present in person left during this portion of the presentation.

The only portion of D'Amico's presentation which caused me any concern was regarding how illegal aliens could influence elections. D'Amico explained illegal aliens could lobby and demonstrate in favor or against politicians. D'Amico then said illegal aliens could work in polling places or as election judges and in this way influence elections. D'Amico stated these positions are filled by volunteers and it was not necessary to be a citizen to serve in these functions. Although not expressly stated, I felt this implied an illegal alien could become involved in election tampering.

After D'Amico spoke Huertas gave some closing remarks. Huertas urged anyone listening to document police interactions and to contact her office if they witnessed what they believed was a targeted or discriminatory arrest related to HB2350.

D'Amico took some questions from the audience through Zoom chat. One participant asked if the Governor's office was doing anything to influence the way the Kansas Highway Patrol would enforce HB2350. D'Amico said the office in charge of directing all law enforcement agencies in the state of Kansas is the Attorney General's Office. D'Amico said conversations are taking place "behind the scenes", but the Attorney General's office has yet to provide a clear statement on how HB2350 should be enforced. D'Amico said conversations are also taking place with other law enforcement agencies, but some law enforcement agencies are more approachable than others. Huertas told the audience if anyone listening had law enforcement contacts to help by facilitating conversations between them and her office.

Huertas told the audience another meeting regarding HB2350 would take place on July 13, 2023 at the UFCW2 building in Dodge City, Kansas.

At the end of the presentation some listeners stayed behind to provide their information to Melissa McCoy so they could receive more materials and information regarding HB2350. I was approached by Jose Garcia and I greeted him cordially. Due to past interactions with Garcia I was concerned he would alert the rest of the audience that I was a police officer which could have led to some controversy, so I left with the first group of audience members.

Respectfully,

Jose Soto #D336

Dodge City Police Department

06/30/2023

PLS_000247

## Bingesser, Matt

| | |
|---|---|
| **From:** | Laura Francis <███████████> |
| **Sent:** | Friday, June 30, 2023 2:21 PM |
| **To:** | Kris Kobach; Kobach, Kris |
| **Subject:** | Human Smuggling Workshops |
| **Attachments:** | image0.jpeg; image1.jpeg; image3.jpeg |

**CAUTION:** This email originated from outside of the Office of The Attorney General of Kansas organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Kris,

Attached are a few poster invitations from the Kansas Hispanic & Latino American Affairs Commission, along with other organizations, promoting community informational meetings on HB2350/Human Smuggling law. I believe the DCPD LEO report was sent to you as well that covers the content of these meetings, put on by the governor's office and spreading misinformation and division. Thank you for tackling this and helping Kansas be more safe!

Laura Francis
Dodge City

1

<  **City of Dodge City - Government** ✓ •••
Jun 21 · 🌐

The Kansas Hispanic and Latino Affairs Commission (KHLAAC) and UFCW2 will provide an informative virtual session on House Bill 2350 (Crimes of Human Smuggling) on June 28th from 6:00 pm to 8:00 pm. To access this event, scan the QR code below or view the event in person at the Dodge City Public Library at 1001 N. 2nd Avenue, Dodge City.

---

La Comisión de Asuntos Hispanos y Latinos de Kansas (KHLAAC) y UFCW2 ofrecerán una sesión informativa virtual sobre el proyecto de ley 2350 de la Cámara de Representantes de Kansas (Crímenes de Contrabando de Personas) el 28 de Junio de 6:00 pm a 8:00 pm. Para acceder a este evento, escanee el código QR a continuación o vea el evento en persona en la Biblioteca Pública de Dodge City en 1001 N. 2nd Avenue, Dodge City.
See translation

**Virtual Informative Session**          **Sesión informativa virtual**

    

    June 28th     28 de Junio
                                          6:00 pm-8:00              6:00 pm-8:00

PLS_000249

# UPCOMING WORKSHOPS

**ANGRY ABOUT THE NEW LAW (HB 2350) TARGETING THE LATINO COMMUNITY?**

JOIN US FOR A FREE WORKSHOP ON WHAT YOU CAN DO ABOUT IT, HOW THE NEW LAW CAME TO BE, AND WHAT THE COMMUNITY NEEDS TO KNOW.

JUNE 1ST | WICHITA, KS | EVERGREEN COMMUNITY CENTER

JUNE 8TH | OLATHE, KS | EL CENTRO INC

JUNE 22ND | KANSAS CITY, KS | EL CENTRO INC

JUNE 27TH | LIBERAL, KS | CROSSPOINT LIBERAL

DODGE CITY | DATE TO BE ANNOUNCED

GARDEN CITY | DATE TO BE ANNOUNCED

TOPEKA | DATE TO BE ANNOUNCED

STAY TUNED FOR FURTHER DETAILS



Kansas
Office of the Governor



KHLAAC PRESENTS

# MI VOTO MI VIDA

**ANGRY ABOUT THE NEW LAW TARGETING THE LATINO COMMUNITY?**

JOIN US FOR A FREE WORKSHOP ON **WHAT YOU CAN DO ABOUT IT,** HOW THE NEW LAW CAME TO BE, AND WHAT THE COMMUNITY NEEDS TO KNOW.

**THURSDAY, JUNE 22, 2023 | 6:00-8:00PM**

EL CENTRO INC.
650 MINNESOTA AVE #2, KANSAS CITY, KS 66101

## WHAT TO EXPECT:
- Learn How the New Law (HB 2350) Will Affect the Latino Community
- Civic and electoral education: Learn how the government works and how to make a difference
- Advocacy Training
- Hear From a Panel of Local Experts and Organizations

**FREE DINNER WILL BE PROVIDED**

   

PLS_000251